

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

June 24, 1949

Hon. William L. Kerr, President
Board of Regents
State Teachers Colleges
Midland, Texas

Opinion No. V-848.

Re: The legality of using funds
available under the College
Building Amendment to con-
struct and equip buildings
which will be revenue pro-
ducing.

Dear Sir:

We quote from your request for opinion as follows:

"You have heretofore advised our Board
of procedural matters under the Constitutional
Amendment Building Program. (Tex. Const.
Art. VII, Sec. 17; A. G. Opinion Nos. V-798, V-
799.) We now make further request and impose
upon you for additional opinion as to the use we
may make of the available money.

"Seven colleges are under the jurisdic-
tion of our Board. The needs of the respective
schools are varying. For instance, the most
pressing need in the greater number of our
schools is for class room buildings, but as to
one or perhaps two, the urgent need is for din-
ing halls or dormitories or combination of the
two. As to one or perhaps two, the pressing
need is for gymnasiums. In other words, as to
some of the schools, the need is for buildings
which would be self-sustaining in part and the
type of building for which revenue bonds have
been issued in the past, under the Skiles Act.
(Art. 2654c-1, V.C.S.)

"For the use of our Board in determining the type of buildings to be permitted under the Building Amendment, will you please advise:

"May our Board of Regents expend funds available under the Building Amendment for:

"(1) The construction and initial equipment of dining halls, dormitories, gymnasiums and other types of buildings from which revenue from use may be obtained in part;

"(2) May such available funds be used for the repair and modernization of old buildings placed upon respective campuses, all to make them more usable and more attractive."

Section 17, Article VII of the Constitution of Texas, the College Building Amendment, provides in part as follows:

". . . there is hereby levied . . . a State ad valorem tax on property of five cents (5¢) . . . for the purpose of acquiring, constructing, and initially equipping buildings or other permanent improvements at the designated institutions of higher learning; and the governing board of each of such institutions of higher learning is fully authorized to pledge all or any part of said funds allotted to such institutions as hereinafter provided, to secure bonds or notes issued for the purpose of acquiring, constructing and initially equipping such buildings or other permanent improvements at said respective institutions . . . ."

By virtue of this Constitutional Amendment, the governing board of each designated institution of higher learning, including the State Teachers Colleges, is authorized to pledge the tax funds thereby to be provided and allotted "to secure bonds

or notes issued for the purpose of acquiring, constructing and initially equipping . . . buildings or other permanent improvements at said respective institutions." It neither describes nor fixes any other limitations as to the types of buildings or other permanent improvements which may be acquired or constructed. Therefore, the bonds or notes may be issued to secure funds for the acquisition, construction and the initial equipping of any type of building at the respective institutions which the governing board properly deems necessary in carrying out the functions of its educational institution, including those types of buildings which may be constructed under the provisions of Articles 2603c or 2654-1, V.C.S.

However, Article 2603c provides that the construction or acquisition of the improvements therein authorized shall be "without cost to the State of Texas," and that any bonds issued thereunder "shall not be an indebtedness of the State of Texas, but shall be payable solely from the revenues to be derived from the operation of said buildings." Also, in Article 2654-1, it is provided that the acquisition and construction of the improvements provided for therein "shall be made without cost to the State of Texas, and no bonds issued for such improvements shall constitute a debt of the State of Texas in any manner whatsoever, but shall be a charge only against those revenues specifically pledged for their payment." A. G. Opinions Nos. O-1273, O-1694, O-1707, O-6036, O-6993, by prior administrations. These statutes would not preclude the issuance of bonds or notes under Section 17 of Article VII. However, if revenue bonds were or are to be issued under Article 2603c or Article 2654c-1, then these statutes would apply to such revenue bonds and the use of the proceeds. In other words, the buildings or improvements could be financed either by the issuance of bonds or notes under Section 17 of Article VII or by the issuance of revenue bonds under Article 2603c or Article 2654c-1, but not by both.

It is clear, therefore, that the proceeds from the notes or bonds issued under Section 17 of Article VII, Constitution of Texas, can be used neither to supplement funds obtained by the issuance of revenue bonds under Article 2603c or Article 2654c-1, nor to pay the construction or acquisition costs of the improvements covered by such revenue bonds, nor to pay any part of the interest on and principal of such bonds.

We are unable to answer your second question categorically because it involves fact considerations. Section 17

provides, as stated, that the money realized from the sale of the bonds, shall be spent:

"for the purpose of acquiring, constructing, and initially equipping buildings or other permanent improvements . . ."

As stated by the Court of Civil Appeals:

"The primary purpose of the amendment . . . was . . . for the purpose of financing the construction and equipment of buildings and other permanent improvements . . ." Whiteside v. Brown, 214 S.W.2d 844 (1948), error refused).

The amendment was referred to by that Court as it was and is commonly denominated, the "College Building Amendment." The caption on S.J.R. 4 (the amendment as proposed by the Legislature) states that the amendment provided:

"A method of payment for the construction and equipment of buildings and other permanent improvements . . ."

Construing the history of the amendment it is our interpretation that it was intended by the Legislature and the people to provide primarily for the construction or acquisition of buildings, and the construction or acquisition of other permanent improvements. There is no provision in the amendment for the repair of existing buildings out of such funds. On the contrary, the amendment says that the participating colleges (except in case of calamity) "shall not . . . receive any other state funds for the acquiring or constructing of buildings or other permanent improvements . . ."

It will be noted also that the amendment uses the word "initially" in saying "for the purpose of acquiring, constructing, and initially equipping buildings or other permanent improvements." The word "initially" so used further indicates that the people and the Legislature contemplated the construction or acquisition of such buildings or other permanent improvements as might require "initial equipment." That part of the amendment

calling for "initial equipment" certainly does not contemplate repairs. "Initial equipment" indicates equipment for the first time.

If "repairs" and similar operations may be paid for out of College Amendment money, then the Legislature is prohibited under the provision quoted above from making any appropriation for such operations during the effective life of the amendment. So a college which calculated that it would receive 6 million dollars under the amendment could not expend 6 million dollars for the construction of buildings and initially equipping them. It would have to save back enough money to repair and remodel its laboratories, classrooms, et cetera, for the whole effective life of the amendment--because it could not receive any money from the general revenue for such items during that period.

The people and the Legislature intended no such result. They intended that the money should be invested in buildings and similar permanent improvements at the colleges which were so badly needed by them after the late war, and which will be needed during the effective life of the amendment. It called for capital investment of the money -- not the use of it for maintenance, alterations, and repairs.

The above is our general interpretation of the use of the money contemplated under the amendment. It is conceivable that the shell of a building could be so completely remade and altered that the college would be considered as thereby "acquiring" or "constructing" a new building or improvement. The construction of a new wing on an existing building would doubtless be considered to be within the contemplation of the amendment. We have no particular facts before us and will not attempt to lay down any hard and fast line as to when there is an "acquiring" or "construction" and when there is a repairing or alteration. The matter rests in the first instance within the sound discretion of the governing boards of the various institutions. The responsibility was placed there by the people in the adoption of the amendment. The good faith and sound judgment of such governing boards will be given due respect by the courts should their decisions be questioned.

## SUMMARY

The Board of Regents of State Teachers
Colleges may expend its Constitutional Amend-

ment building funds (Tex. Const. Art. III, Sec. 17) for the acquisition or construction and initial equipping of any type of building at the institution which the Board properly deems necessary in carrying out the functions of its institution, including those types of buildings authorized to be constructed under the provisions of Articles 2603c or 2654c-1, V.C.S.

Such funds may not, however, be used to supplement funds obtained by the issuance of revenue bonds under Article 2654c-1 or 2603c, or to pay any part of the construction or acquisition costs of the improvements covered by such revenue bonds, or to pay any part of the principal and interest requirements of such revenue bonds. A. G. Opinions V-798, V-799.

The money received from College Amendment bonds may not be used to make repairs to existing buildings.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

Joe R. Greenhill
First Assistant

George W. Sparks
Assistant

APPROVED:

Price Daniel
ATTORNEY GENERAL

JRG:GW:wc